STATE, Appellant, vs. MJER, Respondent.

*November 19—December 15, 1948.*

For the appellant there was a brief by the *Attorney General, William J. McCauley,* district attorney of Milwaukee county, and *Joseph E. Tierney,* deputy district attorney, and oral argument by *Mr. Tierney.*

*Charles Swidler* of Milwaukee, for the respondent.

HUGHES, J. The appeal presents this question: May a judge who is acting in place of the judge who issued a search warrant, because of an affidavit of prejudice, grant a motion to suppress the evidence obtained pursuant to the authorized search, without any affirmative proof of irregularity or insufficiency in the proceedings previous to the issuance of the search warrant?

Counsel for the state argue that the evidence produced by Officer Behrendt of the Milwaukee police force before District Judge NEELEN was sufficient to establish an honest belief in the mind of said magistrate that the offense of printing lottery tickets was being committed by the defendant on the premises at 2320 South 13th street in the city of Milwaukee.

After a description of the premises the officer stated his cause for asking for issuance of a search warrant in one answer:

"On Tuesday, September 30, 1947, between the hours of 12 noon and 8 p. m., I observed seven unknown persons enter and leave the first-floor premises located directly in the rear of the beauty shop at 2320 South 13th street, city of Milwaukee, county of Milwaukee, state of Wisconsin, one of whom was John Morroydis, a known and convicted gambler. On Tuesday, October 7, 1947, between the hours of 12 noon and 8 p. m., I observed eight unknown persons enter and leave the said premises. On Tuesday, October 14, 1947, between the hours of 12 noon and 8 p. m. I observed nine unknown persons enter and leave the said premises. On Tuesday, October 21, 1947, between the hours of 2 p. m. and 4:30 p. m., I observed seven unknown persons enter these said premises, empty handed, and come out of the print shop with packages. Based upon my experience as a police officer in the investigation of gambling activities and especially in relation to gambling pools, I believe that football pools are being printed in the said premises and being taken out by various agents serving as distributors of such gambling football pools. I have reason to believe from my personal observation and from complaints received, written and oral, and also as a result of a conviction obtained against Henry Meyer or Mier for the printing and possession of gambling pools in the said premises; that gambling football

pools and lottery tickets are being printed and distributed at the first-floor premises occupied by the Lincoln Press, located at 2320 South 13th street, city of Milwaukee, county of Milwaukee, state of Wisconsin."

It is contended by the state that this evidence was sufficient to justify issuance of the search warrant, that the officer knows as a police officer that football pools are placed in the hands of circulators on Tuesday of each week for use on the following week-end games.

In the first place, there was no showing that traffic in and out of the print shop on Tuesdays was greater than on other days of the week at the same hours, which, if true, might be a suspicious circumstance, or that the packages were all the same type, or that the unknown persons were the same persons on each Tuesday that the place was kept under surveillance. It is probable that customers patronizing a legal printing shop go in empty handed and come out with merchandise which they have had printed.

We wish to deal particularly with that portion of the officer's testimony before Judge NEELEN:

"Based upon my experience as a police officer in the investigation of gambling activities and especially in relation to gambling pools, I believe that football pools are being printed in the said premises. . . . I have reason to believe from my personal observation and from complaints received, written and oral, and also as a result of a conviction obtained against Henry Meyer or Mier for the printing and possession of gambling pools in the said premises; that gambling football pools and lottery tickets are being printed and distributed. . . ."

The first sentence of the above-quoted portion is a pure conclusion of the officer and utterly worthless. The law requires that facts sufficient to satisfy the magistrate be presented and this requirement is not met by a belief in the mind of the complaining witness, whether he be an officer or a civilian. *State v. Baltes* (1924), 183 Wis. 545, 552, 198 N. W. 282; *Hansen*

*v. State* (1925), 188 Wis. 266, 268, 205 N. W. 813; *Glodow-ski v. State* (1928), 196 Wis. 265, 269, 220 N. W. 227.

If the officer had obtained facts either by written or verbal statements from others which caused him to believe that an offense was being committed by the defendant upon the premises for which he sought a search warrant, then it was clearly his duty to produce such persons before the magistrate so that they could there state the facts relied upon. It was also the duty of the magistrate to require them to appear before issuing a search warrant. The officer's statement that such complaints had been made to him was pure hearsay. *Glodowski v. State* (1928), 196 Wis. 265, 274, 220 N. W. 227.

This leaves us with but two suspicious circumstances appearing as actual facts in the oath of the officer: (1) The defendant had previously been convicted of gambling; (2) one of thirty-one customers of his print shop was a known gambler.

It is not the law that a person convicted of a previous offense loses his constitutional guaranties. To hold with the state on this contention would come dangerously close to establishing that principle.

The statement of the officer to Judge NEELEN was insufficient to authorize the issuance of a search warrant.

The state's principal contention upon this appeal is that a search warrant having been issued by Judge NEELEN, the presumption that he had an honest belief that grounds for its issuance existed is so strong that another judge sitting in his stead at the preliminary examination is bound by the presumption and cannot make a contrary finding in the absence of affirmative proof of its insufficiency.

In the absence of the record upon which the search warrant was issued, there would be a presumption that the warrant was lawfully issued. *Glodowski v. State* (1928), 196 Wis. 265, 271, 220 N. W. 227. This presumption does not persist in the face of direct proof to the contrary from the record itself.

One can challenge the legality of the search only upon the record established before the magistrate when he authorized issuance.

Judge CANNON, presiding as a district court after an affidavit of prejudice had been filed against Judge NEELEN, had the duty of exercising his own judgment upon the questions presented to him.   At the preliminary examination he had the duty of determining whether there was sufficient evidence (admissible evidence) to warrant binding the defendant over for trial.   He could not dispose of this question without first disposing of the defendant's motion to suppress the evidence obtained by use of the search warrant illegally issued.   This was the proper way to challenge the legality of the search warrant. *State v. Warfield* (1924), 184 Wis. 56, 62, 198 N. W. 854; *State v. Baltes* (1924), 183 Wis. 545, 553, 198 N. W. 282.

Upon the hearing before Judge CANNON, the question having been properly raised, he had not only the power but the duty to pass upon the legality of the evidence and of the search warrant under which that evidence was procured.

The state then having advised the court that it had no other evidence against the defendant, the dismissal followed as a matter of course.

*By the Court.*—Order and judgment affirmed.