STATE EX REL. NIEDERER, Appellant, v. CADY, Warden, Wisconsin State Reformatory, Respondent.

*No. 528 (1974). Argued January 6, 1976.—*
*Decided April 20, 1976.*
(Also reported in 240 N. W. 2d 626.)

For the appellant there were briefs by *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* assistant state public defender, and oral argument by *Mr. Eisenberg.*

For the respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. The petitioner for *habeas corpus,* Richard Niederer, was a parolee who was permitted, under the provisions of sec. 57.13, Stats., the Out-of-State Parolee Supervision Act, to leave the state of Wisconsin for the purpose of employment in Minnesota. Because of conduct which the parole authorities determined to be sufficient for revocation, the defendant was returned to the state of Wisconsin, his parole was revoked, and he was required to complete his sentence. His petition for *habeas corpus* was quashed by the circuit court.

The petitioner argues that he was deprived of his constitutional rights, because the Act under which he was permitted to work in Minnesota denies him the right to an extradition hearing prior to his return to Wisconsin. He also contends that the procedure adopted by the state of Wisconsin in the pickup of compact parolees denies him equal protection of the laws, because a parolee who absconds from the state is entitled to an extradition hearing, while one who leaves the state with permission is denied that right.

He additionally argues that he was entitled, under *Morrissey v. Brewer* (1972), 408 U. S. 471, 92 Sup. Ct. 2593, 33 L. Ed. 2d 484, to a preliminary hearing, in respect to his parole revocation, in Minnesota at the location that the incident which triggered the revocation occurred.

Upon his return to Wisconsin, he waived the right to a final administrative hearing on revocation; and he alleges that that waiver was not voluntary and knowledgeable.

We conclude that the Out-of-State Parolee Supervision Act is not unconstitutional on the ground that it denies the right of an extradition hearing; and we further conclude that the use of that statute in respect to compact parolees does not deny equal protection of the law, because there is a legally recognizable difference between the status of a parolee who leaves the state with permission and one who absconds from the state.

We decline to address ourselves to the facts which Niederer claims support his contention that he was denied both statutory and constitutional rights in the manner in which his revocation was heard or in respect to the method in which certain waivers were obtained. We conclude that, insofar as Niederer is concerned, this appeal is moot.

The record and the statements at oral argument demonstrate that Niederer was discharged from custody in September of 1974. Hence, in respect to him, there is nothing before this court for determination. Were the status of Niederer the only question before this court on appeal, we would dismiss without opinion, because the petitioner's rights in the controversy were terminated by lapse of time. However, we retain this appeal, because it involves questions of public interest, even though it has become moot in respect to the interest of Niederer.

The state public defender's office substantially acknowledges the mootness of Niederer's claim, but correctly urges that we decide the statutory and constitutional questions, because they involve the right of the state to enforce a statute that potentially affects significant constitutional rights of a large class of individuals—parolees who have left the state pursuant to interstate

compact (sec. 57.13, Stats.)—and thus pose questions which are capable of significant repetition.[1]

The record shows that this defendant was given a mandatory release from prison. He was placed on parole, but he requested that he be afforded the out-of-state privileges extended under sec. 57.13, Stats. That statute recites the congressional authorization for the state of Wisconsin to enter into compacts with other states of the United States to permit persons convicted within a "sending state" to reside in another state party to the compact, the "receiving state," while on probation or parole. While in the "receiving state," the parolee is supervised by the appropriate probation or parole authorities of that state. Minnesota and Wisconsin are both parties to this interstate compact.

Crucial to the resolution of the constitutional dispute posed in the instant case is sec. 57.13 (3), Stats. That portion of the statute provides:

"57.13 (3) That the duly accredited officers of a sending state may at all times enter a receiving state and there apprehend and retake any person on probation or parole. For that purpose no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are expressly waived on the part of states party hereto, as to such persons. The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state; provided, however, that if at the time when a state seeks to retake a probationer or parolee there should be pending against him within the receiving state any criminal

[1] Although we dismiss the appeal of Niederer as being moot, a review of the record shows that the trial judge conducted an exhaustive evidentiary hearing, which resulted in specific findings supported by clear and convincing evidence that the defendant had been accorded his statutory rights, that he was fully cognizant of those rights, and that the waiver of them was voluntary and knowledgeable.

charge, or he should be suspected of having committed within such state a criminal offense, he shall not be retaken 'without the consent of the receiving state until discharged from prosecution or from imprisonment for such offense."

This statute, then, specifically abrogates sec. 976.03, Stats., the Uniform Criminal Extradition Act, in respect to parolees who have been released to another state under the compact. The only formality required under sec. 57.13 (3) for the retaking of an out-of-state parolee is that the official from the "sending state" who desires to retake the parolee establish his authority and the identity of the parolee.

The record shows that it is the practice of the department of corrections to secure a specific waiver of extradition from a parolee when he applies for permission to go to another state. While it is appropriate and necessary that the parolee be informed of the provisions of the statute which make extradition unnecessary, the execution of a waiver is superfluous, for no parolee who goes to another state under this statute has either a constitutional or statutory right to insist on the utilization of the Uniform Criminal Extradition Act.

The state public defender apparently argues that extradition is a constitutional right, which affords to anyone sought to be removed from one state to another a full-blown extradition hearing, and that the failure to afford such a hearing violates due process.

We conclude that, under the constitution and the implementing federal statutes, no right to extradition is conferred upon a fugitive or upon one in the position of an out-of-state parolee. In the event that extradition is appropriate or necessary, there are indeed certain statutory rights that are conferred upon persons sought to be extradited. These, however, are not of constitutional proportions, unless it appears that a state applies these

statutory provisions arbitrarily or capriciously or that the practices constitute a denial of equal protection of the law.

However, the question which we must first resolve is whether extradition is a right that is constitutionally afforded one sought to be removed from one state by the authorities of another.

The Uniform Criminal Extradition Act, sec. 976.03, Stats., details procedures to be applied when extradition is sought. The rights afforded under extradition acts are, however, statutory and not constitutional.

In *Lascelles v. Georgia* (1893), 148 U. S. 537, 542, 13 Sup. Ct. 687, 37 L. Ed. 549, the United States Supreme Court said:

"The sole object of the provision of the Constitution [Art. IV, sec. 2] and the act of Congress to carry it into effect is to secure the surrender of persons accused of crime, who have fled from the justice of a State, whose laws they are charged with violating. Neither the Constitution, nor the act of Congress providing for the rendition of fugitives upon proper requisition being made, confers, either expressly or by implication, any right or privilege upon such fugitives . . . [or] exemption from trial for any criminal act done therein."

The United States Supreme Court has gone so far as to say that, constitutionally, a prisoner may be tried even though the extradition process is totally ignored in removing him from an asylum state, and even under circumstances where he is removed by force. *Ker v. Illinois* (1886), 119 U. S. 436, 7 Sup. Ct. 225, 30 L. Ed. 421; *Mahon v. Justice* (1888), 127 U. S. 700, 8 Sup. Ct. 1204, 32 L. Ed. 283; *Frisbie v. Collins* (1952), 342 U. S. 519, 72 Sup. Ct. 509, 96 L. Ed. 541. In the latter case, the court stated:

". . . due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair

trial in accordance with constitutional procedural safe-guards." *Frisbie*, page 522.

In *Ponzi v. Fessenden* (1922), 258 U. S. 254, 260, 42 Sup. Ct. 309, 66 L. Ed. 607, the United States Supreme Court stated:

"One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. . . . Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it."

The statutory extradition process is a right conferred upon the asylum state whereby, as a sovereign, it may assert its rights to protect its own citizens or persons within its boundaries from unjust criminal actions that may be brought by a sister sovereign state.

It is apparent, therefore, that a defendant has no constitutional right to extradition. Only the asylum state has any rights in that regard. The nature of extradition as a right of the states is expressly recognized in sec. 57.13 (3), Stats., of the Out-of-State Parolee Supervision Act. That section contains the language:

"All legal requirements to obtain extradition of fugitives from justice are expressly waived *on the part of states* party hereto . . . ." (Emphasis supplied.)

The state public defender places heavy reliance upon this court's recent decision in *State ex rel. Garner v. Gray* (1972), 55 Wis. 2d 574, 201 N. W. 2d 163, to support the conclusion that a defendant has a right to be removed from another state only by the extradition process.

Initially, it should be stated that *Garner* was not concerned with a parolee who had left one state with permission to go to another. The question posed was whether there was an arbitrary denial of a statutory right when, in respect to fugitives similarly situated, a state could, capriciously and at its option, employ the Uniform Detainer Act, which gave no notification of pending removal proceedings to a prisoner, rather than the Uniform Criminal Extradition Act, which is hedged about with numerous provisions for notification to the prisoner of his rights. The question in *Garner* was not the deprivation of a constitutionally afforded right to a particular procedure, but whether a statutory right was administered in an unconstitutional manner.

That *Garner* went no further is apparent ·from the language employed by the court, which relied in part upon *Ponzi, supra*. This court said in *Garner*, page 583:

"The state's argument, however, overlooks several established constitutional doctrines. The first is that a statutorily given right, albeit not constitutionally required, cannot be arbitrarily denied. The second doctrine is that of the existence of a right necessarily implying the notification thereof."

It is accordingly clear that *Garner* in no way held that extradition was a right conferred upon a fugitive. It merely held that a state could not, in respect to the retaking of a fugitive, choose on an arbitrary basis to utilize one statutory remedy rather than another. It is implicit in *Garner* that a prisoner has no right to complain if one sovereignty waives its right to insist on a traditional extradition procedure. *Garner* did not mandate that extradition, rather than the detainer process, be used. It merely held that, if the detainer process were to be used, the defendant was to be given a notification of his rights substantially equivalent to that employed under the extradition acts.

The doctrine that the rights afforded to fugitives under the Uniform Criminal Extradition Act are not mandated by the constitution was also stated in *State ex rel. Lutchin v. Outagamie County Ct.* (1969), 42 Wis. 2d 78, 82, 165 N. W. 2d 593, wherein we said:

"Thus it appears that petitioner's statutory rights under the Uniform Criminal Extradition Act were violated—but not any rights guaranteed under the federal or state constitutions."

No court has held that the Out-of-State Parolee Supervision Act violates the constitution. The statute has been attacked on grounds that it violates art. IV, sec. 2, of the Constitution of the United States, which confers extradition rights upon the states. It has been attacked on the ground that it violates art. I, sec. 9, of the United States Constitution, the right to *habeas corpus,* and on grounds that it violates due process and equal protection of the law. *See: Ex parte Tenner* (1942), 20 Cal. 2d 670, 128 Pac. 2d 338; *Gulley v. Apple* (1948), 213 Ark. 350, 210 S. W. 2d 514; *Pierce v. Smith* (1948), 31 Wash. 2d 52, 195 Pac. 2d 112; *Woods v. State* (1956), 264 Ala. 315, 87 So. 2d 633; *U. S. ex rel. Simmons v. Lohman* (7th Cir. 1955), 228 Fed. 2d 824; and *Johnson v. Buie* (W. D. Mo. 1970), 312 Fed. Supp. 1349.

Each of these courts holds that the federal constitutional provisions for extradition are not intended to confer rights on a fugitive, but are rather to facilitate the bringing to trial of fugitives from justice. The essence of these cases is that, because a parolee is deprived of no federally protected right, constitutional or statutory, in not being afforded an extradition proceeding, there is no due process violation. *See also: Cook v. Kern* (5th Cir. 1964), 330 Fed. 2d 1003; *Caveny v. Illinois* (7th Cir. 1966), 359 Fed. 2d 787.

However, the fact that no fugitive has a federal constitutional right to an extradition process does not mean

that it can be afforded to some persons similarly situated and not to others. The state public defender argues that the use of the out-of-state compact, which provides for a waiver of extradition in respect to those parolees who have left the state by permission, and the use of extradition proceedings under sec. 976.03, Stats., by a parolee who has absconded from a state's jurisdiction, denies equal protection of the law. On its face, the argument is appealing: Why grant greater rights to one who has left the state without authority than to one who has left the state with permission?

In essence, then, the question is whether, as in *State ex rel. Garner v. Gray, supra,* the statutory rights given some persons are arbitrarily withheld in respect to others.

The problem is one of classification. Is it reasonable to afford different treatment to those paroled out-of-state pursuant to the compact authorized by sec. 57.13, Stats.? It is clear that these two groups of parolees are treated differently. Under the specific provisions of the Uniform Criminal Extradition Act, an absconded parolee is afforded statutory protection. Under sec. 57.13, the protection afforded under the extradition laws is specifically set aside.

While the cases from other jurisdictions cited above hold that, because the compact applies uniformly to all parolees under the compact, there is no violation of equal protection, they have not satisfactorily approached the distinction raised here by the state public defender that there is a lack of uniform treatment—a denial of equal protection—as between absconding parolees and permitted out-of-state parolees.

While the rationale applicable in *Garner, supra,* is appropriate to this case, as pointed out above the facts here are clearly distinguishable from those in *Garner.*

In *Garner,* there was no distinction between the class of persons subject to the detainer act and the class of

persons who were proceeded against by extradition. In the instant case, however, the class of persons subject to sec. 57.13, Stats., is not composed of all parolees but only those paroled for supervision in another state. In *Garner*, the state took the position that it could proceed against any fugitive under either act. Here, the state is required to employ extradition proceedings unless the parolee has left the state pursuant to the interstate parole compact. Is this a legally justifiable distinction?

We have recently restated the basic test to be applied when the operation of a statute is attacked on the ground of a denial of equal protection. In *Omernik v. State* (1974), 64 Wis. 2d 6, 18, 19, 218 N. W. 2d 734, we said:

"A legislative classification is presumed to be valid. The burden of proof is upon the challenging party to establish the invalidity of a statutory classification. Any reasonable basis for the classification will validate the statute. Equal protection of the law is denied only where the legislature has made irrational or arbitrary classification. The tests to be applied in determining whether there has been a reasonable legislative classification in this state are fivefold: (1) All classification must be based upon substantial distinctions; (2) the classification must be germane to the purpose of the law; (3) the classification must not be based on existing circumstances only; (4) the law must apply equally to each member of the class; and (5) the characteristics of each class should be so far different from those of other classes as to reasonably suggest the propriety of substantially different legislation. The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification."

Measuring the distinction made under the statutes between absconding parolees and compact parolees against these standards, we conclude that the distinction in treatment is reasonable and rational under the interest to be served by the compact parolee statute and is

founded on legally relevant differences. The difference is not that relied upon by the state. The state rests the legislative distinction upon whether the parolee has signed a waiver of extradition. We think that irrelevant, because no portion of the statute, sec. 57.13, Stats., requires a written waiver of extradition. That right does not exist and, accordingly, is not subject to waiver when a parolee elects to subject himself to out-of-state supervision. The waiver has nothing to do with the classification. It is the statute itself, sec. 57.13, that abrogates the necessity for a waiver.

The basic argument of the state public defender is that, on its face, the statute violates equal protection. The purpose of sec. 57.13, Stats., justifies the state's summary return of the parolee to the territorial jurisdiction of the "sending state" and justifies the "receiving state's" relinquishment of any right to extradition proceedings. As stated above, extradition is not a right conferred upon a prisoner or fugitive. All he can ask is that all persons who are afforded the right of extradition be treated equally and that those persons who are denied procedures under extradition statutes are not denied them arbitrarily.

Parole is an integral part of the criminal justice system and has as its object the rehabilitation of those convicted of crime and the protection of the state and community interest.

Where, as in the instant case, it is reasonable to conclude that the availability of employment would facilitate rehabilitation, it was appropriate to transfer the parolee to Minnesota under new surroundings and with an opportunity to be afforded gainful employment. Such transfers beyond the territorial jurisdiction of the state, although clearly in the interest of both the state and the parolee, require adequate control and supervision during

the readjustment prior to the unrestricted return to society. Accordingly, it is in the interest of the state of Wisconsin and in the interest of society generally that the agreement between the states not abrogate the authority of the "sending state" to return a parolee either for revocation proceedings or for a different type of supervision. Obviously, neither of these state interests are in any way implicated where a parolee absconds from the state in which he is under supervision and is in effect a fugitive from all penal control of the parole and probation regulations in his home state.

An absconding parolee is no different than any other fugitive from justice and is properly afforded only those protections that are given to fugitives under the Uniform Criminal Extradition Act.

Although that distinction is relevant, it is insignificant in comparison with the state interest, which, as we have stated, is applicable in respect to extradition. When a parolee absconds, the asylum state has no knowledge that a parolee from another state is a member of its population, and no agreement has been entered into for his supervision. When a parolee has been transferred to another state pursuant to the sec. 57.13, Stats., compact, the "receiving state" has consciously accepted an obligation of supervision, acknowledges the jurisdiction of the "sending state" over the parolee, and, more importantly, is fully aware of the underlying parole situation and why the parolee has come to the "receiving state."

An absconding parolee who flees to Minnesota mixes with the population and, initially at least, is indistinguishable from any other Minnesota citizen. As the cases cited in the first portion of this opinion demonstrate, the substantial right protected in both the federal extradition statutes and the Uniform Criminal Extradition Act is to allow a sovereign state to protect its citizens from an unreasonable or unjustified removal to another state.

*People ex rel. Millet v. Babb* (1953), 1 Ill. 2d 191, 115 N. E. 2d 241.

It is the inherent right of every sovereign state to protect all who come within its boundaries from an illegal and unwarranted deprivation of personal liberty. Hence, a state has the right to insist on formal extradition proceedings concerning anyone who comes within its boundaries. Thus, it is reasonable, in the case of a fugitive, for the demanding state to show that it has jurisdiction over persons in the asylum state as fugitives. The demanding state is required to show that the person sought is charged with a crime and is a fugitive from justice.

These facts have been predetermined prior to the transfer, when a parolee goes to another state pursuant to compact. Thus, the "receiving state," from the very beginning, is informed of the compact parolee's presence, gives full recognition to the "sending state's" jurisdiction, and under the agreement has the compact parolee under supervision. The asylum state has no such knowledge in respect to a parolee who has fled the state of conviction. In such a case the asylum state has a legitimate interest in the protection of those who come within its boundaries and may, by insistence upon extradition proceedings, make sure that a demanding state's jurisdiction is clearly established.

When this factual difference is considered, it is apparent that the petitioner's argument—that it makes no sense to give more rights to an absconding parolee than to a compact parolee—is without foundation, for the right afforded by extradition is not one conferred upon the absconder but upon the state in which he has sought asylum.

There is no evidence or allegation that it is the practice of the state of Wisconsin to discriminate between parolees of the same class. All parolees who are out of

state pursuant to compact are given treatment in accordance with the provisions of sec. 57.13, Stats. All parolees who have absconded are afforded the statutory rights given by the Uniform Criminal Extradition Act. There is a real and substantial difference between the two classes of parolees. The criteria set forth in *Omernik, supra,* are satisfied. A compact parolee is not denied the equal protection of the law.

While we have stated that Niederer's case is moot, we should allude to one fact apparent from the record that indicates that the strictures of *Morrissey v. Brewer* may not in all cases be followed where a parolee is returned to the state under the terms of the interstate compact. *Morrissey v. Brewer* adverted to those situations where a parolee may have been released for supervision in another state. It seems clear that the due process requirements set forth in that opinion are applicable to parole or probation revocation, whether or not they are outside of the jurisdiction of the state seeking further sanctions and whether or not they are outside of the state as permittees or as fugitives.

The United States Supreme Court in *Morrissey v. Brewer,* page 485, stated:

". . . due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. . . . Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts which would constitute a violation of parole conditions."

In the instant case the record shows that Niederer's return to the state of Wisconsin was sought because he had committed a crime in the state of Minnesota. The record shows that he pleaded guilty to the charge and

that plea was accepted by a court of competent jurisdiction. However, no judgment of conviction was entered, because the state of Minnesota elected to permit him to be returned to Wisconsin rather than, as is permitted by sec. 57.13, Stats., to proceed with its own criminal sanctions. The state of the Minnesota record and the defendant's admission against interest by his plea of guilty was indisputable and within the admitted knowledge of the Wisconsin authorities.

It would appear, therefore, that this type of situation falls squarely within an exception permitted by *Morrissey v. Brewer:* "Obviously a parolee cannot relitigate issues determined against him in other forums . . . ." (P. 490)

While the guilty plea did not result in a judgment of conviction, the guilty plea was made and accepted. This undisputed fact was therefore sufficient, as a preliminary matter, to support further revocation proceedings. Were we to decide this question on the merits in regard to Niederer, we would therefore conclude that the initial or preliminary examination requirement was satisfied.

We discuss the question here even though, in the factual posture of this case, Niederer's claim is moot, because we wish to emphasize the conclusion of this court that *Morrissey v. Brewer* requires a preliminary determination at or near the place where the offense has taken place even when the retaking is under sec. 57.13, Stats., unless the circumstances fall within the specific exceptions of *Morrissey v. Brewer.* It should be restated that this preliminary type of determination is in no way analogous or procedurally similar to an extradition hearing. Its scope is limited to the strictures established in *Morrissey v. Brewer.*

In summary, then, although we have referred to the facts in respect to Niederer's return to Wisconsin as illustrative of the problems posed under the Out-of-State Parolee Supervision Act, we conclude that, because Niederer was discharged long before this court could

afford him any relief, the matter in respect to him is moot and his appeal from the order quashing his application for writ of *habeas corpus* is dismissed.

In respect to the constitutional issues raised by the state public defender, because they are of substantial importance and are likely to be of recurring concern, we declare that sec. 57.13 (3), Stats., is constitutional, that it neither offends against constitutional due process nor the constitutional right of equal protection. Under the facts as they are presented, it is apparent that a real and legally relevant distinction exists between absconding parolees and permitted out-of-state parolees, and that the law is administered uniformly with respect to the class of individuals to whom it is applicable. There is, accordingly, no denial of due process in the application of the law.

*By the Court.*—Appeal of Niederer is dismissed; and the constitutionality of sec. 57.13 (3), Stats., is declared in accordance with the opinion herein.