STATE EX REL. KOJIS, Respondent, vs. BARCZAK, Sheriff, Appellant.

*April 15—May 5, 1953.*

For the appellant there was a brief by the *Attorney General* and *William J. McCauley,* district attorney of Milwaukee county, and *Ben J. Wiener,* special assistant district attorney, and oral argument by *Mr. Wiener.*

For the respondent there was a brief by *Cornelius P. Hanley* of Milwaukee, attorney, and *Terence N. Hickey* of Hayward of counsel, and oral argument by *Mr. Hanley.*

FAIRCHILD, J.   It was the contention of Kojis that in the North Carolina proceedings he was not substantially charged with crime, and the trial court so held.  The requisition executed by the governor of North Carolina and directed to the the governor of Wisconsin expressly states that Kojis ". . . stands charged with the crime of conspiracy and filing a false oath to obtain benefits from insurance which I certify to be a crime under the laws of this state. . . ."  It may be conceded that the certificate of the governor, though worthy of consideration, is not decisive because if it were there would be no point in the statutory requirement, sec. 364.03, Wis. Stats., that the affidavit made before the magistrate shall accompany the requisition and shall show a substantial charge of crime as a condition of the recognition of the demand for extradition.  The decision of the trial court quashing the writ and discharging the prisoner therefore must be tested against the affidavit, itself, upon which the warrant was issued.

Examination of such accompanying copy of the affidavit shows that W. C. McCall, complainant, on oath informed the magistrate that on a day named, Joseph A. Kojis ". . . wilfully, maliciously, and unlawfully and feloniously did knowingly present or cause to be presented a false or fraudulent claim and proof in support of said claim, for the payment of a fire loss to the Mannequin Artcraft Company on or about September 28, 1951, in the amount of $31,794 upon a con-

tract of insurance; and did wilfully and knowingly prepare, make and subscribe to a false or fraudulent account, certificate, affidavit, or proof of loss, in the amount of $31,794, with the intent that said account or proof of loss would be presented and used in support of said claim, in violation of G. S. 14-214 of N. C. against the statutes in such case made and provided, against the peace and dignity of the state, . . ." A warrant for the arrest was issued by the magistrate upon each affidavit.

The allegation that such acts by Kojis were done feloniously can have no other construction than that the acts, thus done, constituted crimes.

"The term 'feloniously' has no synonym, as it describes a peculiar disposition and intent essential to the existence of crimes of a certain grade, and determines the privileges of the accused on his trial, and the degree and consequences of the punishment. It admits of no substitute. *State v. Jesse,* 19 N. C. 297, 300." Cited by 16 Words and Phrases (perm. ed.), Felonious; Feloniously, p. 421.

If the affidavit stopped with such allegation, we consider that it substantially charged Kojis with the commission of a crime but its reference to general statutes of North Carolina, sec. 14-214, puts the court on inquiry, the more since by sec. 328.01, Wis. Stats., Wisconsin courts are directed to take judicial notice of the statutes of sister states. Sec. 14-214, North Carolina Stats., reads:

14-214. *"False oath to procure benefit of insurance policy or certificate.*—Any person who shall wilfully and knowingly present or cause to be presented a false or fraudulent claim, or any proof in support of such claim, for the payment of a loss, or other benefits, upon a contract of insurance; or prepares, makes, or subscribes to a false or fraudulent account, certificate, affidavit, or proof of loss, or other document or writing, with intent that the same may be presented or used in support of such claim, shall be punishable by imprisonment for not more than five years or by a fine of not more that five

hundred ($500) dollars, or by both such fine or imprisonment within the discretion of the court."

The trial court construed this as a penalty statute not as one defining and creating a crime. In this we consider the court erred, if we correctly understand the court to mean that a penalty or forfeiture was imposed collectible in a civil, not a criminal action. In the first place, the imprisonment specified is not for failure to pay such forfeiture as the court may decree, but may be imposed either without any sacrifice of money or property or in addition to such sacrifice. This has the distinct attributes of a criminal, not a civil penalty. Further, sec. 14-214, North Carolina Stats., is one section of art. 28, subch. VIII of ch. 14, Laws of North Carolina. Ch. 14 is entitled "Criminal Law;" subch. VIII, "Offenses against Public Justice;" and art. 28, "Perjury." There is no hint here that the offenses with which Kojis is charged are anything but crimes; and in the requisition made by the governor, which is entitled to weight, he certifies that such offenses are crimes under the laws of his state. The statute is annotated by reference to *State v. Stephenson,* 218 N. C. 258, 10 S. E. (2d) 819, an action in which Stephenson was indicted, tried, and convicted for violation of this section. Judgment was reversed because of failure of proof and errors on the trial. The action was handled throughout as a prosecution for crime and nowhere in the case is there any suggestion that it is in fact something else.

There is no doubt in our minds that the affidavits substantially charged Kojis with having committed a crime under the laws of North Carolina.

McCall, the affiant above mentioned, was the agent sent by North Carolina to conduct Kojis back to that state for trial. He was sworn as a witness and over objection was questioned concerning his firsthand knowledge of the facts stated in his affidavit. The learned trial court concluded that McCall's knowledge of them was not such as to satisfy the North

Carolina laws concerning the issuance of warrants and for that reason and the further one that the court determined sec. 14-214, North Carolina Stats., was a penalty statute, as such court so described it, not one which defined or prescribed a criminal offense law, held that Kojis was illegally in custody and ordered him discharged.

We consider that the "penalty statute" construction has been sufficiently covered. Concerning the inquiry into the taking of McCall's affidavit and the extent of his knowledge of the facts, we conclude that the trial court exceeded its jurisdiction. Sec. 364.20, Wis. Stats., declares that in extradition proceedings the guilt or innocence of a party may not be inquired into except for the purpose of identification, which is not involved here. We construed this section literally in *State ex rel. Kohl v. Kubiak,* 255 Wis. 186, 38 N. W. (2d) 499. The affidavit need not provide proof sufficient to convict the person informed against. It need not satisfy the requirements of a pleading. Sec. 364.03 says that it must substantially charge the person demanded with having committed a crime, and this affidavit did so. Inquiry into the knowledge of the affiant and the procedure had before the magistrate is beyond the jurisdiction of the courts of the asylum state. If it were not so, no extradition could or should be granted by Wisconsin until the demanding state had produced for examination here the witnesses upon whom such state had placed reliance when the warrant was issued and had made in Wisconsin at least a *prima facie* case by their testimony, free from factual doubt or procedural irregularity. We consider that such doubts and irregularities are matters of defense in the forum of the offended state but are beyond the scope which the Uniform Criminal Extradition Act confers on the courts of the state in which the fugitive is found. We are not at all convinced that the testimony of McCall impeached his affidavit. The trial court thought it did, but whether or not that is so, his testimony was irrelevant and

incompetent in this proceeding and will not sustain the trial court's decision.

Wherefore, we conclude that the learned trial court should have quashed the writ.

*By the Court.*—Order reversed and cause remanded with direction to quash the writ and for further proceedings consistent with this opinion.