STATE EX REL. LUTCHIN, Petitioner, v. OUTAGAMIE COUNTY COURT and others, Respondents.

*Argued September 27, 1968.—Decided March 24, 1969.*
(Also reported in 165 N. W. 2d 593.)

---

[8] (1954), 267 Wis. 436, 66 N. W. 2d 154.
[9] *Id.* at page 439.

For the petitioner there were briefs and oral argument by *Robert E. Henke* of Appleton.

For the respondents the cause was argued by *William A. Platz,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

WILKIE, J. Three issues are presented in our consideration of this petition:

(1) Can defects in the asylum state's court proceedings leading to extradition be challenged in the Wisconsin court in which criminal proceedings are launched following extradition?

(2) Can the legality of the governor's warrant be tested in the Wisconsin court?

(3) Is it too late for the legality of the governor's warrant to be tested where the defendant has submitted to the jurisdiction of the court without raising this defense?

Sec. 964.10, Stats., of the Uniform Criminal Extradition Act, provides as follows:

"**Rights of accused; application for writ of habeas corpus.** No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him

unless he shall first be taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that *he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus.* When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state." (Emphasis supplied.)

A similar provision appears at sec. 2963.09 of the Ohio Statutes.

Petitioner's principal attack on the Ohio court proceedings is on its denial of counsel. In addition to a denial of statutory rights, petitioner alludes to the fact that there may also have been a denial of due process. He cites two cases [1] from other jurisdictions which interpret the statute in question to require the appointment of counsel. However, both of these courts determined that the right to appointed counsel was based upon the statute and did not reach the constitutional question. [2] Thus it appears that petitioner's statutory rights under the Uniform Criminal Extradition Act were violated— but not any rights guaranteed under the federal or state constitutions.

Because of these deprivations, petitioner argues that he was "unlawfully detained" and that the proper remedy for such detention is dismissal of the criminal charges with prejudice to the state. In support of this position, petitioner cites prior decisions of this court requiring that a confession, obtained during a period of unreason-

---

[1] *People ex rel. Harris v. Ogilvie* (1966), 35 Ill. 2d 512, 221 N. E. 2d 265; *In re Turner* (Texas 1967), 410 S. W. 2d 639.

[2] *See, e.g., In re Turner, supra,* footnote 1, at page 641.

able detention between the arrest and the time the defendant was charged, be suppressed whether or not voluntary.[3] Petitioner also cites various search and seizure cases wherein the courts have required the suppression of illegally seized evidence.[4] Petitioner then proceeds to argue by analogy that because illegally seized property is not to be used in trial and is to be restored to its rightful owner (with the exception of contraband), "liberty illegally obtained should be entitled to the same protection: if liberty is unlawfully obtained or retained after obtained, it should likewise be restored."

Clearly, petitioner's argument cannot prevail. Not only is there a lack of direct authority for such a result, but the policy behind the exclusionary and suppression rules does not apply in this situation. Application of an exclusionary rule to a situation where evidence has been illegally seized, or where a defendant has been unreasonably detained between arrest and charging, is presumed to have the effect of conforming the future conduct of law enforcement personnel to proper constitutional and legislative standards. However, dismissal of charges against the petitioner in this case would have no such effect in that petitioner's statutory rights were allegedly denied by an Ohio trial judge—not by Wisconsin law enforcement officials. A dismissal on the merits in this type of case would mean that a jurisdiction over which this court has no supervisory power could determine whether Wisconsin could proceed against persons charged with criminal acts against the state of Wisconsin.

Also, petitioner's argument rests on the allegation that he was "unlawfully detained." However, this begs the question. A better characterization of the situation would

---

[3] *Reimers v. State* (1966), 31 Wis. 2d 457, 143 N. W. 2d 525; *State ex rel. Van Ermen v. Burke* (1966), 30 Wis. 2d 324, 140 N. W. 2d 737.

[4] *E.g., Lee v. Florida* (1968), 392 U. S. 378, 88 Sup. Ct. 2096, 20 L. Ed. 2d 1166.

be to say that he was denied the opportunity to *test* the legality of his detention. The legality of his detention depends on the legality of the governor's warrant. At this point it is not known whether his detention was illegal.

Therefore, it appears that a reasonable solution to this matter, giving effect to the Uniform Criminal Extradition Act, would be to afford the petitioner the opportunity to do in Wisconsin that which he was prevented from doing in Ohio, namely, challenge the validity of the governor's warrant with the assistance of counsel. This could be accomplished in Wisconsin as well as in Ohio. There is Wisconsin authority which supports this conclusion.

In *State ex rel. Foster v. Uttech*,[5] wherein Wisconsin was the asylum state and Indiana was the demanding state, this court stated that:

". . . no person arrested upon the governor's warrant may be delivered to the agent of the demanding state unless he is first taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged and that he has a right to demand and procure legal counsel and if the prisoner or his counsel shall state he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time within which to allow him to apply for a writ of *habeas corpus*. Sec. 964.10." [6]

We went on to state:

"We think this court in a *habeas corpus* proceeding may examine into constitutional questions affecting the legality of the arrest in this state for extradition at least where constitutional standards are shown not to have been complied with on the face of the documents. If this court was restricted solely to the questions of identity, of fugitive status, and of whether an extraditable

---

[5] (1966), 31 Wis. 2d 664, 143 N. W. 2d 500.

[6] *Id.* at page 670.

crime is charged, there would be very little purpose in providing a statutory right to a *habeas corpus* 'to test the legality of his arrest.'" [7]

Thus, the court went on to conclude that the Indiana warrant did not comply with the constitutional standards set forth in *State ex rel. White v. Simpson,*[8] and the petitioner was discharged.

In *Uttech,* this court also indicated that the demanding state had a responsibility to review alleged defects in the demand.

"In some of the older cases the attitude has prevailed in extradition cases that the defects in the demand are questions to be raised in the demanding state after the accused is returned. We think there is no justice in saying to a person in Wisconsin subject to our laws and entitled to the protection of his rights, that he may be extradited but may contest the legality of his extradition *ex post facto.* Nor is it just to put the accused to the expense, inconvenience and jeopardy involved in a defense in the demanding state when this preliminary prerequisite to extradition can be determined here." [9]

Thus, while recognizing its responsibilities under the Uniform Criminal Extradition Act, this court also recognized that the final responsibility for the legality of the demand procedure lies with the demanding state.

Mr. Justice GORDON, in his dissenting opinion, stated that "[t]here is indeed doubt whether the Indiana proceedings were proper, but such doubt should be resolved in the Indiana courts, not in the Wisconsin supreme court." [10]

In *State ex rel. Kojis v. Barczak,*[11] which predated *Uttech,* this court in referring to procedures in the demanding state stated:

---

[7] *Id.* at page 671.

[8] (1965), 28 Wis. 2d 590, 137 N. W. 2d 391.

[9] *State ex rel. Foster v. Uttech, supra,* footnote 5, at page 675.

[10] *Id.* at page 676.

[11] (1953), 264 Wis. 136, 141, 58 N. W. 2d 420.

". . . Inquiry into the knowledge of the affiant and the procedure had before the magistrate is beyond the jurisdiction of the courts of the asylum state. . . . We consider that such doubts and irregularities are matters of defense in the forum of the offended state but are beyond the scope which the Uniform Criminal Extradition Act confers on the courts of the state in which the fugitive is found."

Thus it appears that Wisconsin, as the demanding state, bears the responsibility to review the legality of petitioner's detention on timely objection by petitioner. It must be noted however, that the issue in question is the sufficiency of the governor's warrant and *not* the procedural irregularities before the trial court of a sister state.

In the instant matter the petitioner, after being brought back to Wisconsin, had a preliminary and was arraigned in the trial court. On February 29, 1968, he appeared in the trial court and while represented by counsel submitted to the court's jurisdiction over his person. He did not first attack the legality of the governor's warrant. He did not in any way question the court's jurisdiction of his person. He entered a plea of not guilty. By September 16, 1968, he had long passed the time to challenge [12] the Wisconsin law enforcement procedures in connection with the extradition.

Our holding herein is that a defendant extradited from another state has a right to timely challenge the validity of his arrest upon his return to Wisconsin. However, on the facts before us, it is clear that defendant's challenge was not timely for the reason that he submitted himself to the jurisdiction of the court before making his challenge. Consequently, relief must be denied.

[12] *State v. Greene* (1968), 40 Wis. 2d 88, 161 N. W. 2d 239; *State ex rel. La Follette v. Raskin* (1966), 30 Wis. 2d 39, 139 N. W. 2d 667.

In answer to the state's contention that *Frisbie v. Collins* [13] is controlling in the disposition of this matter, we need only observe that the rationale set forth in this opinion is not inconsistent with that case.

*By the Court.*—Alternative writ of prohibition is denied.

