**Gregory Joe WARMBO, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3375.**

Supreme Court of Alaska.

May 5, 1978.

Beverly W. Cutler, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

Glen C. Anderson, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

CONNOR, Justice.

This is an extradition matter. Gregory Joe Warmbo, under indictment in Alaska for passing a forged check, asserts that Alaska is without jurisdiction to try him, because extradition proceedings against him in the State of Washington did not comport with Washington law and with due process.

On February 10, 1977, Warmbo was indicted by a state grand jury in Anchorage for passing a forged check for $1,500 and attempting to pass another for $4,200. A bench warrant was issued for his arrest.

Warmbo was arrested in King County, Washington, and arraigned on March 10, 1977, on a fugitive complaint. Scott Smouse, a Seattle attorney, was appointed to represent him.[1] No further action was taken, pending the receipt by the Governor of Washington of a demand for extradition by the Governor of Alaska. RCW 10.88.220. On March 18, 1977, the Seattle court indefinitely continued the matter pending word from Alaska.

The demand was executed in Juneau on March 18th. Sometime thereafter Deputy Sheriff Howard of King County informed the Seattle judge and prosecutor of the demand, but did not inform Warmbo or his counsel. Warmbo and his counsel learned of Alaska's demand on March 31st when

---

1. The only source of evidence concerning what happened in the State of Washington is the affidavit of Warmbo's Seattle counsel, appended to his petition for habeas corpus. The state presented no responsive evidence, and the trial judge relied on the facts as stated in the affidavit, in preparing his opinion.

Warmbo appeared in court concerning an attempt by the State of Washington to revoke his probation.

On March 28th the Governor of Washington issued her warrant of arrest based on the Alaska demand. RCW 10.88.260, Uniform Criminal Extradition Act § 7, AS 12.70.060. On April 1st, at what was apparently the court appearance on the Governor's warrant contemplated by RCW 10.88.-290, Warmbo and his counsel learned of the issuance of the warrant by the Governor of Washington.

Warmbo's counsel objected. He insisted that (1) his client was entitled to notice between the time the Governor of Washington received the demand and the time she issued her warrant, (2) his client was entitled to a "Governor's hearing" before an official in the executive branch, at which hearing the alleged fugitive may request on either legal or equitable grounds that the warrant not issue, (3) the failure to give notice was a denial of due process, (4) the Governor should withdraw her warrant, as RCW 10.88.390 permits her to do, and (5) Warmbo should be given time to raise these points in a petition for habeas corpus as permitted by RCW 10.88.290.

The matter was argued by Smouse, Deputy Howard, and the court on Friday afternoon, April 1st. The judge took the matter under advisement over the weekend and calendared it for Monday, April 4th, at 1:30 p. m. The judge assured Warmbo that "nothing will happen to him until Monday, anyhow."

Also on Friday, without notice to Warmbo or his counsel, the probation revocation hold was withdrawn. The personnel at the King County jail apparently thought this cleared the way for Warmbo's return to Alaska, and on Sunday, April 3rd, he was transported to Anchorage, without notice to the court or to his counsel.

On Monday afternoon, when he returned to court, Warmbo's counsel was advised by Deputy Howard that Warmbo had been returned to Alaska. He argued the matter further until the court dismissed the fugitive proceeding on the ground that it was moot.

Meanwhile, on the afternoon of April 4th, Warmbo was arraigned on the indictment before Judge Ralph Moody in Anchorage. A public defender, who had no prior knowledge of Warmbo or the case, was appointed to represent him and put in a plea of not guilty on his behalf. The events in Seattle were not mentioned in the brief arraignment.

On Friday, April 8th, Warmbo filed an action for habeas corpus. It was heard before Judge Victor D. Carlson on April 13th, and on April 15th he denied the writ in a written opinion. This appeal was taken from that denial. The underlying criminal action has been stayed pending the disposition of this appeal.

■ A long and almost unbroken line of authority holds that a state has jurisdiction to try a person for a crime if that person is within the state, even if his presence there was obtained by force, fraud, or violation of the laws of this or another state or country. *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Mahon v. Justice,* 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283 (1888); *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Glasgow v. State,* 469 P.2d 682, 684 (Alaska 1970);[2] Annot. 28 A.L.R.Fed. 685 (1976).[3]

**2.** Warmbo distinguishes *Glasgow* in several ways. That case dealt merely with the alleged illegality of a warrantless arrest in Canada, with no evidence of illegality beyond the mere allegations. This case, on the other hand, deals with a number of alleged specific procedural violations of the uniform act and due process. *Glasgow* was an appeal from a conviction; here, Warmbo is asking for a new hearing, not outright dismissal of the charges. Furthermore, Warmbo asserts that in *Glasgow* a variety of public policy arguments against the *Frisbie v. Collins, supra,* rule were not considered by the court.

**3.** The Second Circuit questioned the principle, and made an exception to it, in *United States v. Toscanino,* 500 F.2d 267 (2d Cir. 1974), where it was claimed that the defendant had been tortured and kidnapped in a foreign country by agents of the United States government, and ultimately brought to the United States by force without judicial process whatsoever.

Warmbo contends that the *Frisbie* principle is both outdated and wrong, and that it should not be followed. He points out that the scope of due process of law has been enlarged greatly since the *Frisbie* decision in 1952, citing such cases as *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Additionally, he urges that various Alaska cases have recognized increase protections for persons to whom the extradition process is applied. Indeed, as we observed in *Wortham v. State*, 519 P.2d 797, 800 (Alaska 1974),

> "[P]ersons subjected to extradition proceedings are protected by certain constitutional rights which assure that the extradition power is not applied against them in an oppressive or arbitrary manner."

In *Montague v. Smedley*, 557 P.2d 774 (Alaska 1976), we held that the Fourth Amendment forbade Alaska as an asylum state to render up a prisoner absent a showing of probable cause to believe that he had committed a crime in the demanding state. In *Kostic v. Smedley*, 522 P.2d 535 (Alaska 1974), we held that extradition proceedings in the asylum state must be stayed if the defendant is mentally incapable of understanding the proceedings and aiding his counsel. This followed from the statutory right to the assistance of counsel in extradition proceedings in the asylum state, as well as by analogy to the due process prohibition against trial of a person mentally incapable of understanding or assisting in his defense.

Warmbo relies on two recent decisions of the Supreme Court of Wisconsin which have permitted judicial inquiry in the demanding state into events in the asylum state.

In *State ex rel. Lutchin v. County Court*, 42 Wis.2d 78, 165 N.W.2d 593 (1969), *cert. denied*, 396 U.S. 856, 90 S.Ct. 121, 24 L.Ed.2d 106 (1969), the defendant had been returned to Wisconsin by Ohio. In Ohio, he had not been offered the assistance of counsel as required by statute. The Wisconsin court rejected his contention that the charges should be dropped, but said the proper remedy was to give him in Wisconsin the hearing, with counsel, that he was denied in Ohio. The final responsibility for the legality of the demand procedure, the court said, lies with the demanding state. Lutchin was denied relief, however because he had waited several months after his return before raising the issue.

*State ex rel. Niederer v. Cady*, 72 Wis.2d 311, 240 N.W.2d 626 (1976), is less favorable to Warmbo's position. It concerned not an extradition under the uniform act, but a Wisconsin parolee who had been given permission to reside in Minnesota. Parole was revoked, and he was returned to Wisconsin without a hearing in Minnesota, pursuant to the Interstate Compact on Probation and Parole. The Wisconsin court held that this compact, and its application to the defendant by Minnesota, were constitutional. Warmbo finds support in the case because the Wisconsin court scrutinized what happened in Minnesota; the state finds support in the holding that there is no constitutional right to judicial extradition proceedings in

---

The court remanded for an evidentiary hearing on the allegations. This holding has been strictly limited to its own facts; another defendant who alleged that he had been kidnapped but not tortured was denied relief. *United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir. 1975), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975).

On remand, Toscanino was denied relief when he failed to demonstrate the involvement or complicity of the United States government in his abduction. 398 F.Supp. 916 (E.D.N.Y. 1975).

Several other federal circuits, including the Ninth, have rejected the *Toscanino* reasoning. *E. g., United States v. Cotten*, 471 F.2d 744 (9th Cir. 1973), *cert. denied*, 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 396 (1973). *Cotten* appears to be factually distinguishable from *Toscanino*, but *Cotten* nevertheless squarely rejected the proposition accepted in *Toscanino*: that *Frisbie* must be read in light of later non-extradition Supreme Court criminal procedure cases. *See generally* Annot., 28 A.L.R.Fed. 685 (1976).

the asylum state, citing *Frisbie* and other cases.[4]

Warmbo asks that he be returned to the State of Washington so that he can seek a "Governor's hearing," which he says he is entitled to under Washington law. The applicable statute in that state is RCW 10.-88.230, which reads:

"When a demand shall be made upon the governor of this state by the executive authority of another state for the surrender of a person so charged with crime, the governor may call upon the attorney general or any prosecuting officer in this state to investigate or assist in investigating the demand, and to report to him the situation and circumstances of the person so demanded, and whether he ought to be surrendered." [5]

We have examined the case law of Washington [6] and of other jurisdictions with similar statutory provisions. We find absolutely no indication that the courts of Wash-

ington, or any other state, have interpreted this statute to give a fugitive the legal right to a hearing before a representative of the Governor.[7]

No doubt the Governor of Washington could cause such a hearing to be held.[8] But there is no assurance that Warmbo would receive that hearing merely because he demanded it.

■ We are confronted with a situation in which, through misunderstanding or bureaucratic error, Warmbo was returned to Alaska before the judge in Washington was able to determine his claims under Washington law. But this is not a case where government agents have employed means which shock the conscience of the court. Warmbo has not been deprived of a significant legal right under the statutory law of Washington which would justify remanding him to that state. In these circumstances we are unwilling to order his return to the State of Washington merely so that he can

---

4. Both parties cite cases in which convicted prisoners sought relief in federal court under 42 U.S.C. § 1983 for extradition in violation of state laws. The vastly different procedural posture of these cases probably makes them irrelevant. *Johnson v. Buie,* 312 F.Supp. 1349 (W.D.Mo.1970) (dismissing case); *Pierson v. Grant,* 357 F.Supp. 397 (N.D. Iowa 1973) (permitting case to proceed).

5. Alaska has modified this section of the uniform act, to read:

"When a demand is made upon the governor of this state by the executive authority of another state for a surrender of a person charged with crime, the governor shall investigate the demand." AS 12.70.030

6. In *State v. Pritchett,* 12 Wash.App. 673, 530 P.2d 1348 (1975), which held that after a governor's warrant is issued the asylum state cannot admit the defendant to bail, the defendant presented a number of equitable considerations to the court: mitigating circumstances of his crime, and the poor health of his wife. The court said, "[W]hile we are sympathetic to the defendant's claims, they are not properly before the courts of this state in an extradition proceeding. These claims are more properly made to the governor prior to the issuance of his warranty." *Id.,* at 1350. And as the court observed in *Vetsch v. Sheriff of Spokane County,* 14 Wash.App. 971, 546 P.2d 927, 929 (1976):

"Extradition is a proceeding for the speedy rendition of criminals by the asylum state, and is not a proceeding to inquire into the

merits of the charge. It was designed as a summary executive procedure between governors, not as a technical judicial function. These statutes are to be interpreted with this purpose in mind and should not be narrowly interpreted as to enable persons charged with a crime to find permanent asylum in another state. In keeping with the summary nature of extradition, the scope of judicial review of a governor's warrant has been historically narrow in Washington." (footnotes omitted)

7. In *Brown v. State,* 518 P.2d 770, 772 & n.6 (Alaska 1974), the defendant claimed that the governor of the asylum state (there, Alaska) had inadequately investigated the extradition demand under this section. We held that investigation under AS 12.70.030 was a matter of executive discretion and that the claim was not judicially cognizable.

8. RCW 10.88.210 provides:

"Subject to the provisions of this chapter, the provisions of the Constitution of the United States controlling, and any and all acts of congress enacted in pursuance thereof, *the governor of this state may in his discretion* have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state." (Emphasis added)

seek a hearing which might be granted as an act of executive discretion but not as a legal right.

We hold that Warmbo is subject to the jurisdiction of Alaska. He must now proceed to trial on the Alaska indictment.

AFFIRMED.