**Daniel Franklin ELLIOTT, Appellant,**

v.

**R.H. JOHNSON, Sheriff, Appellee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 13, 1991.

Permission to Appeal Denied by Supreme Court July 1, 1991.

James Harvey Stutts, Sweetwater, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Amy L. Tarkington, Asst. Atty. Gen., Nashville, Jon Chalmers Thompson, Asst. Dist. Atty. Gen., Madisonville, for State of Tennessee.

## OPINION

WADE, Judge.

The petitioner, Daniel Franklin Elliott, appeals from the trial court's dismissal of his petition for writ of habeas corpus.

The issues presented for review are

(1) whether this state is bound under the full faith and credit clause of the United States Constitution to honor the finding by the Circuit Court of Berkeley County, West Virginia, that the petitioner was not in this state on the date of the alleged offense; and

(2) whether the petitioner's rights to substantive and procedural due process were violated when this state took him into custody from the State of Virginia.

We find no error and affirm the judgment of the trial court.

The petitioner and the state stipulated the facts presented to the trial court. On December 10, 1987, the petitioner was allegedly involved in an armed robbery of Earl's Super Value, a grocery store, in Sweetwater, Tennessee. Earlier, a search warrant had been issued in West Virginia authorizing the search of the residence of Linda Matson. The petitioner was at the residence when the search warrant was executed on December 11, 1987. At that time, the officers took the petitioner into custody on fugitive warrants issued by the states of Kentucky and Virginia.

After reviewing the articles found in the search, West Virginia authorities contacted Captain Doug Watson of the Sweetwater Police Department. Based upon the infor-mation he received, Watson made an affidavit for the issuance of a warrant in the General Sessions Court of Monroe County charging the petitioner with the armed robbery of Earl's Super Value. A fugitive warrant was issued in West Virginia on December 15, 1987, and was served on petitioner the following day.

On February 4, 1988, the Monroe County Grand Jury returned an indictment against the defendant charging him with the armed robbery. Eleven days later, Tennessee requested the petitioner be extradited from the State of West Virginia. On March 10, 1988, the fugitive warrants filed against Elliott were dismissed for failure to obtain a governor's rendition warrant. Thereafter, the Governor of West Virginia issued a rendition warrant for the petitioner which was served on March 31, 1988.[1]

On April 7, 1988, petitioner was brought into the Circuit Court of Berkeley County, West Virginia, on the governor's warrant and given leave to file a petition for writ of habeas corpus. Chief Mike Jenkins and Captain Doug Watson were named as parties in that proceeding as designated agents for the Governor of Tennessee. At the subsequent hearing, the West Virginia court determined that Tennessee had provided insufficient evidence to establish that the petitioner was in Tennessee on the date of the robbery. Accordingly, the West Virginia governor ordered the petitioner's release from custody.

On July 15, 1988, the petitioner waived extradition to Virginia on other charges.[2] He was taken to the Frederick County Jail in Winchester, Virginia, and on September 13, served with a second fugitive warrant in relation to the Tennessee armed robbery.

On October 31, 1988, the State of Tennessee requested the petitioner's extradition from Virginia. On the following day, the petitioner filed a petition for a writ of habeas corpus resisting his return to this state. The petition was denied on Novem-

---

1. A fugitive incarcerated under a fugitive warrant is entitled to release from custody after 90 days unless the governor's rendition warrant has been issued and executed; however, upon his release, such person remains a fugitive sub-ject to rearrest on the governor's warrant if he remains within the state. W.Va.Code § 5-1-9.

2. These charges were ultimately dismissed.

ber 9, 1988, on the ground that Tennessee had 90 days from September 13, 1988, not July 15, 1988 (the date he was brought to Virginia), within which to effect extradition.[3] The petitioner appealed to the circuit court which upheld the ruling on December 2, 1988.

Six days later, the Governor of Virginia issued a rendition warrant ordering the petitioner's arrest and surrender to Tennessee authorities "after he was afforded an opportunity to sue out a writ of habeas corpus as required by Virginia law." Petitioner asserts that the governor's warrant was never served on him. Following the issuance of that order, on December 13, 1988, two city police officers for Sweetwater, Tennessee, took custody of the petitioner and returned him to Tennessee before he could process the filing for another writ. The officers did not present the Virginia officers with any documents authorizing their actions.

On December 14, 1988, petitioner's scheduled appearance date for review of the fugitive warrants, the fugitive from justice charge was dismissed in his absence.

Several months after his return to this state, the petitioner filed a petition for writ of habeas corpus in the Federal District Court. That court entered an order dismissing the petition due to the petitioner's failure to exhaust state remedies.

Subsequently, the petitioner filed this petition for writ of habeas corpus in the Circuit Court of Monroe County, Tennessee. On April 10, 1990, the trial court entered an order of dismissal. This appeal resulted.

We initially note that the findings by the trial court here, that the Governor of Virginia ordered the petitioner's return to Tennessee after his unsuccessful petition for writ of habeas corpus, are contradicted by the stipulation of facts in two respects:

1. The petition for writ of habeas corpus filed in Virginia was an attack upon the *fugitive warrant* rather than the governor's *rendition warrant.* The petition was denied on the ground that Tennessee had 90 days from September 13, 1988, rather than July 15, 1988, to effect extradition.

2. The rendition warrant executed by the Governor of Virginia and issued December 8, 1988, ordered the petitioner's surrender to Tennessee authorities only *after* he was afforded the opportunity to sue out a writ of habeas corpus as permitted and required by Virginia law.

Of greater importance in our determinations is that the petitioner was incarcerated in the Monroe County Jail in Madisonville, Tennessee, at the time he filed this habeas corpus petition. He has since made bond.

▆▆▆ A person who commits a crime in one state, leaves, and is found in another state is a "fugitive from justice." *Appleyard v. Massachusetts*, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161 (1906). "Interstate rendition" is the right of one state to demand from the asylum state (state to which the fugitive has fled) the surrender of a fugitive from justice. Black's Law Dictionary 820 (6th ed. 1990). "Rendition" is the actual return of such an individual to the demanding state. "Interstate extradition" is the reclamation and surrender by the asylum state, according to due legal proceedings, of a fugitive from justice. *Id.* The Governor of Tennessee "may demand of the executive authority of any other state or territory, any fugitive from justice, or any other person charged with [a] crime in this state and may appoint an agent to demand and receive such person and return such person to this state." Tenn. Code Ann. § 40–9–121(a).[4] The United States Constitution authorizes the extradition of fugitives from justice; extradition has been implemented by federal statute. U.S. Const., art. IV, § 2, cl. 2; 18 U.S.C. § 1381.

---

3. As in West Virginia, an individual arrested in Virginia as a fugitive from justice cannot be confined in jail longer than 90 days. At the end of this time period, if no governor's warrant has been issued, the accused must be released. Va. Code Ann. §§ 19.2–101 and –103.

4. In 1951, Tennessee adopted the Uniform Criminal Extradition Act. By 1989, all states but Mississippi, Louisiana, and South Carolina had implemented the act.

*See State ex rel. Brown v. Grosch,* 177 Tenn. 619, 152 S.W.2d 239 (1941). Yet the procedures for extradition are a matter of state law. *Martin v. Sams,* 600 F.Supp. 71 (E.D.Tenn.1984).

The *Tennessee Interstate Rendition Manual,* published by the Attorney General's Office, is instructive in the extradition process:

> The extradition process usually begins with the issuance in Tennessee of an ordinary criminal warrant by a [judge] charging the fugitive with an offense. The initial charging procedure is the same as in any other criminal case initiated by a warrant.
>
> Once this charge is forwarded to the asylum state ..., the appropriate authorities in the asylum state will normally seek a warrant charging the person sought with being a fugitive from Tennessee. The execution of such a ["fugitive warrant"] is the same as that of any other warrant for arrest. The warrant is directed to any peace officer and commands him to apprehend the fugitive, anywhere found within the state, and to bring the fugitive before any judge ... or court available in, or convenient to, the place where the arrest was made to answer to the charge or complaint against him. Tenn.Code Ann. § 40–9–103.

> &ast; &ast; &ast; &ast; &ast; &ast;

> If there is no waiver of extradition and if it appears after examination by the judge ... that the fugitive is the person sought and that he is substantially charged with the commission of a crime, the judge ... must commit the fugitive to jail [ (bail being available if the fugitive is accused of an offense punishable by less than death or life imprisonment) ]. [The judge] fixes a period of time sufficient to allow the arrest of the accused ... under a governor's warrant pursuant to a requisition by the demanding state.[5]

> &ast; &ast; &ast; &ast; &ast; &ast;

> Upon notification by the authorities in the asylum state that the fugitive ... refuses to waive extradition, [the demanding state proceeds] with the submission of formal papers requesting the Governor of Tennessee to issue a requisition and agent's commission. Tenn.Code Ann. §§ 40–9–123 [to] –125.
>
> A requisition is the formal demand to the governor of the asylum state that the fugitive be surrendered....

> &ast; &ast; &ast; &ast; &ast; &ast;

> Upon receipt, the requisition and commission are examined by the appropriate officials in the asylum state to determine if they conform to the requirements of the extradition law of that state.
>
> Upon approval of the papers ... the [g]overnor [of the asylum] state makes his decision on whether a [g]overnor's warrant should issue.[6]

■ The governor's warrant (also known as a rendition warrant or extradition warrant) is the formal warrant of arrest issued by the governor of the asylum state. This warrant causes the arrest and delivery of the fugitive, and barring habeas corpus proceedings, gives the agents of the demanding state the authority to take the fugitive back. Ballentine's Law Dictionary 445 (3d ed. 1969); 31A Am.Jur.2d *Extradition* § 144 (1989).

■ If the fugitive is not arrested under a governor's warrant by the expiration of the time specified in the commitment warrant, bond or undertaking, the judge may discharge him, re-commit him to a further date, or again take bail for his appearance. *Supra* notes 1 and 3.

■ After the governor of the asylum state, by issuing the warrant, causes the arrest and delivery of a person charged as a fugitive, the accused may invoke the habeas corpus option to challenge the legality of his detention in the asylum state. Prior to being delivered over to the demanding agent pursuant to the governor's warrant,

---

**5.** Tenn.Code Ann. § 40–9–105; *State ex rel. Wells v. Hanley,* 250 Wis. 374, 27 N.W.2d 373, 374 (1947).

**6.** There is no constitutional right to a hearing before the governor.

the fugitive must be taken before a judge of the court of record in the asylum state. If habeas corpus proceedings are requested and instituted, the demanding agent may not remove the fugitive from the asylum state until the courts pass upon the legality of the issuance of the governor's warrant. There is, however, no entitlement to bail in the asylum state during this process. *See Mandina v. State,* 749 S.W.2d 472 (Tenn. Crim.App.1985).

## I

In his first issue here, the petitioner argues that under the Full Faith and Credit Clause of the United States Constitution, the State of Tennessee is required to honor the factual finding of the Circuit Court of Berkeley County, West Virginia, that petitioner was not in the State of Tennessee on the date of the armed robbery set forth in the indictment.

■ The West Virginia Circuit Court held that the State of Tennessee had failed to offer sufficient proof of the petitioner's presence in the demanding state in support of the charge contained in the governor's warrant and had failed to rebut petitioner's testimony that he was not in Tennessee on the date in question. The state submits that the ruling was based upon a technical defect, that is, the state failed to adequately present their rebuttal proof. Therefore, the prior adjudication, based solely upon technical grounds, did not bar subsequent prosecution by the State of Tennessee.

We concur with the state's position and find that the West Virginia determination does not act as a bar.

■ In habeas corpus proceedings instituted to determine the validity of the petitioner's custody where petitioner is held in connection with an extradition proceeding, the asylum state "is limited to consideration of (1) whether the extradition documents are in order on their face; (2) whether the demanding state has charged the petitioner with a crime; (3) whether the person named in the request for extradition is the petitioner before the court"; and (4) whether the petitioner was in the demand-

ing state at the time the criminal offense was committed. *State ex rel. Jones v. Gann,* 584 S.W.2d 235 (Tenn.Crim.App. 1979) (citing *Michigan v. Doran,* 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978)). Guilt or innocence of the fugitive is not an issue in these proceedings. Tenn.Code Ann. § 40–9–114.

■ Generally, whether a discharge on habeas corpus for extradition bars a subsequent extradition proceeding depends on whether the court in the second proceeding is asked to pass upon the same matters from those considered in the first action. If the writ is issued on the ground of failure of proof, insufficient evidence or defective process, courts have generally held that the discharge was not *res judicata* to a subsequent habeas corpus hearing for the same offense in which additional evidence was presented or on new process. Annotation, *Discharge On Habeas Corpus Of One Held In Extradition Proceedings As Precluding Subsequent Extradition Proceedings,* 33 A.L.R.3d 1443 (1970). This appears to be the majority view. *Id.* See *State ex rel. Hebert v. Coleman,* 3 Tenn.Civ.App. 316 (1912). We concur with that rule.

■ Petitioner here contends that the results of the West Virginia extradition proceeding should serve as a bar not to a subsequent extradition hearing but to his prosecution for armed robbery. The discharge of a petitioner in habeas corpus proceedings involving detention under extradition proceedings does not, however, prevent rearrest, prosecution, or imprisonment for the offense itself. 39A C.J.S. *Habeas Corpus* § 228 (1976). Now that the petitioner is in this state, we do not think the West Virginia adjudication in the first extradition proceeding precludes prosecution on the armed robbery indictment.

## II

The petitioner next complains that his substantive and procedural due process rights were violated because the Tennessee officers did not serve him with the Virginia governor's warrant and because he was not allowed to complete the habeas corpus pro-

cess in Virginia. We disagree. The circumstances that brought the petitioner to this state do not rise to the level of constitutional violations.

The stipulated facts establish that the petitioner filed a petition for writ of habeas corpus in Virginia on November 1, 1988, attacking his incarceration under the fugitive warrant. That petition was denied eight days later. The ruling was appealed to the Circuit Court and upheld on December 2, 1988. Then on December 8, 1988, the Governor of Virginia issued a rendition warrant. The warrant ordered the petitioner's arrest yet acknowledged his right to file for a writ of habeas corpus. The Sweetwater police officers returned the petitioner to Tennessee before any other action took place.

The state argues that absent the filing of any appeal and/or the filing of a stay, there was no legal basis to prevent the petitioner's extradition following issuance of the Virginia governor's warrant. At the time he was taken into custody by Tennessee, no appeal had been taken from the order of the Virginia Circuit Court.

In 1885, the United States Supreme Court, in *Roberts v. Reilly,* recognized the right to challenge extradition by writ of habeas corpus, stating that "whenever the executive of the state … causes the arrest, for delivery, of a person charged as a fugitive from the justice of another state, the prisoner … is entitled to invoke the judgment of the judicial tribunals … by the writ of *habeas corpus,* upon the lawfulness of his arrest and imprisonment." 116 U.S. 80, 6 S.Ct. 291, 299, 29 L.Ed. 544 (1885). The constitutional right to challenge extradition in the asylum state by writ of habeas corpus has been recognized by nearly every court that has addressed extradition abuse.[7] Deprivation of that right in most federal circuits is a basis for civil action under 42 U.S.C. § 1983.

We note, however, that the Sixth Circuit has apparently taken the position that the federal constitutional and statutory provisions are not designed to protect the rights of fugitives but are to facilitate interstate justice administration. Thus, a failure to comply with established extradition procedures within that area of jurisdiction does not deprive the fugitive of any protected rights. *Martin v. Sams, Supra.*

■ When a person accused of a crime is found within the territorial jurisdiction in which he is charged and is held under legally issued, court ordered process, neither the jurisdiction of the court nor the right to put him on trial for the offense charged is impaired by the manner in which he was brought into the jurisdiction, whether by kidnapping, illegal arrest, abduction, or irregular extradition proceedings. Annotation, *Modern Status Of Rule Relating To Jurisdiction Of State Court To Try Criminal Defendant Brought Within Jurisdiction Illegally Or As Result Of Fraud Or Mistake,* 25 A.L.R. 4th 157 (1983); *See* 21 Am.Jur.2d *Criminal Law* § 341 (1981); *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Swaw v. State,* 3 Tenn. Crim.App. 92, 457 S.W.2d 875 (1970); *State of Tennessee v. Alvin Lee Smith,* No. 88–136–III, 1989 WL 95734 (Tenn.Crim.App., Nashville, August 22, 1989). Our Code provisions on extradition provide that nothing contained therein

shall be deemed to constitute a waiver by this state of its right, power or privilege to try [a] demanded person for a crime committed within this state, or of its right, power or privilege to regain custody of [a] person by extradition proceedings *or otherwise* for the purpose of trial, sentence or punishment for any crime committed within this state, nor shall any proceedings had under this chapter which result in, or fail to result in, extradition be deemed a waiver by

---

7. Denial of the right to a habeas corpus hearing and violations of the various extradition provisions have been valid bases for 42 U.S.C. § 1983 actions. *Crumley v. Snead,* 620 F.2d 481 (5th. Cir.1980) (The *Crumley* court asserted that "the right to the hearing is one secured by the Constitution and laws of the United States. Any deni-

al of this right gives rise to a cause of action under 42 U.S.C. § 1983." *Id.* at 483). The Sixth Circuit is the only appellate court that has declined to recognize a § 1983 cause of action for violation of extradition rights. *See Stockwell v. Friberg,* 272 F.2d 386 (6th. Cir.1959). *See also Martin v. Sams, Supra.*

this state of any of its rights, privileges or jurisdiction in any way whatsoever.

Tenn.Code Ann. § 40–9–130 (emphasis added).

Once the petitioner is tried in this state, he cannot raise these extradition issues. In *Swaw*, a post-conviction relief case, this court held as follows:

> [D]ue process of law is satisfied when one present in court is convicted of a crime after having been apprised of the charges against him and after a full trial in accord with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person lawfully convicted to escape justice because he was brought to trial against his will.

457 S.W.2d at 876 (quoting *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952)). *See also Garrett v. State*, 534 S.W.2d 325 (Tenn.Crim.App.1975); *Houston v. State*, 567 S.W.2d 485 (Tenn.Crim. App.1978). Because in *Swaw* our court found no constitutional abridgements, post-conviction relief was denied.

Many of the older cases on this subject suggest that even if the extradition issue is raised prior to trial, the petitioner, no matter how brought to this state, is not entitled to return to the asylum state for an adjudication upon the propriety of his extradition. Most of these opinions were written when time and travel were of more significance than today. Practically all of the decisions were entered before the adoption of the Uniform Criminal Extradition Act. There is a modern trend:

> [T]here is developing the view that if defendant's presence is acquired by "government conduct of a most shocking and outrageous character" which was "perpetrated by representatives of the United States Government," then "due process would bar conviction." LaFave and Israel, Criminal Procedure, 3.1 at 156, quoting *United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir.1975), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975); *United States v. Lira*, 515 F.2d 68 (2d Cir.1975), *cert. denied*, 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

We see merit in adopting a policy which promotes adherence by law enforcement to the statutory provisions governing extradition without, at the same time, placing undue procedural obstacles in bringing the out-of-state defendant to justice. We hold that once the petitioner is brought within the boundaries of this state, absent outrageous or illegal conduct by the arresting authorities so extreme as to shock the conscience, he may be placed upon trial for any charges pending. *See Warmbo v. State*, 578 P.2d 582 (Alaska 1978) (Petitioner "was returned to Alaska before the judge in Washington was able to determine his claims.... [T]his is not a case where government agents have employed means which shock the conscience of the court"). We find no such conduct in this case. Consequently, we find no constitutional abridgement that would impair the right of this state to put the defendant to trial.

The judgment is affirmed.

BIRCH and TIPTON, JJ., concur.