726 P.2d 785

STATE of Idaho, Plaintiff-Respondent,

v.

**Wesley Earl BARNHOUSE, Defendant-Appellant.**

No. 16285.

Court of Appeals of Idaho.

Sept. 23, 1986.

Scott Wayman, Orofino, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Wesley Barnhouse conditionally pled guilty and was convicted in Idaho of grand theft. On appeal, he contends the district court erred in denying his pretrial motion to dismiss and in refusing to grant relief on his petition for habeas corpus. In his motion and petition, Barnhouse asserted that he had been arrested and brought before the court in violation of a due process right to resist extradition. As a result, he requested the court to decline jurisdiction over the Idaho charge and to order Barnhouse removed to Montana where he could resist extradition to Idaho. We hold the court did not err in denying Barnhouse's motion or relief to him under his petition. We affirm the conviction.

Barnhouse was stopped in Umatilla County, Oregon, for a traffic violation. The Oregon police determined there were outstanding felony warrants for Barnhouse's arrest, from Sanders County, Montana, and from Clearwater County, Idaho. Barnhouse appeared before a district judge in Oregon and was informed of his extradition rights. He waived his right to challenge extradition to Montana, but explicitly refused to waive extradition to Idaho. The Clearwater County prosecutor decided not to pursue extradition from Oregon and informed the Oregon authorities that the state of Idaho would allow Barnhouse to be transported to Montana and would later extradite Barnhouse from that state.

While in transit to Montana, Barnhouse arrived in Boise, Idaho. Assistance was requested from Clearwater County authorities to transport Barnhouse to Montana. The Clearwater authorities chose to arrest Barnhouse and place him in custody in Clearwater County.

The record in this case is not altogether clear how Barnhouse came to be in Idaho. Apparently he was transported from Oregon to Boise by Oregon personnel, because, in Boise, attempts were made to "find a way to get him to Montana." Such an attempt would have been unnecessary if Barnhouse already was in the custody of Montana authorities in transit to that state.

Further, the record does not establish (and Barnhouse does not contend) that the Oregon authorities released him to any Idaho officer—from Boise or otherwise—in Oregon, in contravention of Barnhouse's expressed desire to resist extradition to Idaho. There is no indication that Boise had any interest in Barnhouse until he turned up in that city in an attempt "to get him to Montana." In sum, the record does not show that Barnhouse was "seized" while in the custody of either Oregon or Montana authorities. At the hearing on Barnhouse's application for habeas corpus relief, the Clearwater County prosecutor represented:

It's my understanding the normal route of travel to get prisoners over to Montana is through Coeur d'Alene and for some reason Mr. Barnhouse ended up in Boise and it had nothing to do with anything anybody in Idaho did. It was—that was the way he was sent. He ended up in Boise.

Boise, as I understand it, was at a little bit of a loss of how to get him over to Montana and started calling around the state trying to find a way to get him to Montana.

There is an agreement now between counties and states where they will move prisoners from one county to another in an attempt to save money and trying to get them from one state to another and Clearwater County participates in that. Clearwater County was contacted about transporting Mr. Barnhouse to Montana. Clearwater County was more or less obligated to participate in that and agreed to do so.

Someone—the jailer in the sheriff's office contacted me. I guess he felt it was a little bit absurd that Clearwater County transport him over to Montana and had to go back over to Montana to get him when we had charges here and they wanted to know if it was legal to arrest him. I advised—I also felt it was a little bit absurd to transport him to Montana and have to bring him back here when we had charges here. He's within the state. We have the power to arrest him.

Since he was within our jurisdiction he was arrested and brought here. But prior to making the arrest I personally called the sheriff's office in the jurisdiction of Montana where the charges existed, communicated through [sic] the sheriff with [sic] the dispatcher there. The sheriff there [was] asked if they would have any objection in their jurisdiction if we took care of our charges in this jurisdiction and they indicated no problem. That was more a matter of a courtesy than anything to do with the law, I believe, but there was absolutely nothing—we had nothing to do with bringing him into the state of Idaho.

We found him in the state of Idaho and he was arrested on a valid warrant and he's before the court. . . .

In Clearwater County, Barnhouse asserted that he was improperly before the Idaho district court. He moved for dismissal and petitioned for a writ of habeas corpus, requesting release to the custody of Montana authorities. Following a hearing, both requests were denied. Barnhouse subsequently entered a conditional plea of guilty, under I.C.R. 11(a)(2), preserving his right to appeal the adverse pretrial decisions.

■ We begin by examining the extradition process. Interstate extradition powers emanate from Article IV, Section 2, paragraph 2, of the United States Constitution. Congress implemented this power through Section 3182 of Title 18 of the United States Code. This act provides that upon proper demand the fugitive shall be delivered to an agent of the demanding state. A complementary section empowers the agent to transport the fugitive to the demanding state. 18 U.S.C. 3194. These statutes were designed to permit states to reach out beyond their boundaries and bring offenders to trial. *Biddinger v. Commissioner of Police*, 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193 (1917).

■ Within those areas of interstate extradition addressed by federal law, it is controlling. *Norton v. State*, 93 Idaho 648, 649, 470 P.2d 413, 414 (1970), *cert. denied*,

401 U.S. 936, 91 S.Ct. 918, 27 L.Ed.2d 215 (1971); *Smith v. Idaho*, 373 F.2d 149, 154 (9th Cir.), *cert. denied*, 388 U.S. 919, 87 S.Ct. 2139, 18 L.Ed.2d 1364 (1967). The states are free to act within those procedural areas not addressed by federal law. *Innes v. Tobin*, 240 U.S. 127, 36 S.Ct. 290, 60 L.Ed. 562 (1916). Most states, including Oregon, Montana and Idaho, have adopted versions of the Uniform Criminal Extradition Act to provide for processing fugitives. *See* 11 Uniform Laws Annotated 51 (1974).

■ Barnhouse argues that Idaho's interference with his extradition to Montana deprived him of a right to challenge extradition to Idaho. It is well established that if the accused is found in this state the court has jurisdiction over the prosecution even if the defendant's presence was obtained by force, fraud, mistake, or violation of law. *In re Moyer*, 12 Idaho 250, 85 P. 897, *aff'd, Moyer v. Nichols*, 203 U.S. 221, 27 S.Ct. 121, 51 L.Ed. 160 (1906); *State v. Hansen*, 101 Idaho 350, 612 P.2d 1197 (1980). *See also Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); and *see generally* Annot., 25 A.L.R.4th 157 (1983). Essentially, "the jurisdiction of the court in which the indictment is found is not impaired by the manner in which the accused is brought before it." *In re Moyer, supra*, 12 Idaho at 259, 85 P. at 900, *quoting Mahon v. Justice*, 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283 (1888). Failure to comply with extradition process ordinarily does not remove jurisdiction. *Ker, supra.*

In one case a court has found it appropriate to create an exception to this doctrine. In *United States v. Toscanino*, 500 F.2d 267 (2d Cir.1974), an Italian national was abducted in Uruguay by American agents and brought to New York for prosecution on charges of conspiracy to import narcotics. Toscanino's kidnapping circumvented extradition process under treaties between the United States and Uruguay. Following his abduction and during a twenty-day period, Toscanino was—on occasion—knocked unconscious; bound and blindfolded; held incommunicado; deprived of food and water; drugged; tortured with pliers, chemical substances and electrical devices; and "incessantly" interrogated. Reasoning by analogy to the deterrent purpose of the exclusionary rule of evidence, the Second Circuit Court of Appeals found the abduction and subsequent torture of the defendant, if true, to be so egregious as to affect the jurisdiction of the trial court. The appellate court held:

> [W]e view due process as now requiring a court to divest itself of jurisdiction over the person of a defendant where it has been acquired as the result of the government's deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights.

500 F.2d at 275. *Toscanino* was soon strictly limited to its facts—characterized by the Second Circuit as "shocking, cruel, inhuman and outrageous" conduct on the part of the government. In *United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir.1975), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668, the court addressed a claim by Julio Lujan that he had been seized and transported from Bolivia to New York on a narcotics charge, without benefit of formal arrest or extradition process. Lujan urged that *Toscanino* compelled dismissal of the indictment against him. Disagreeing, the court said:

> It requires little argument to show that the government conduct of which [Lujan] complains pales by comparison with that alleged by Toscanino. Lacking from Lujan's petition is any allegation of that complex of shocking governmental conduct sufficient to convert an abduction which is simply illegal into one which sinks to a violation of due process....
>
> In sum, but for the charge that the law was violated during the process of transporting him to the United States, Lujan charges no deprivation greater than that which he would have endured through lawful extradition. We scarcely intend to convey approval of illegal government conduct. But we are forced to recognize that, absent a set of incidents like that in

*Toscanino*, not every violation by prosecution or police is so egregious that ... nullification of the indictment [is required].

510 F.2d at 66.

Likewise, the circumstances in the case at bar do not remotely resemble those appearing in *Toscanino*. Barnhouse has alleged no improper action by Idaho authorities, merely that they took advantage of his involuntary presence in Idaho to arrest him on the Clearwater warrant.

■ Barnhouse also attacks the court's jurisdiction by asserting that a "manifest injustice" has been done. However, no prejudice resulting from a loss of his opportunity to challenge extradition to Idaho is evident. No grounds that would have barred extradition from Montana have been suggested. Nor has Barnhouse alleged that the Clearwater County prosecutor's statement—that Idaho would defer extradition proceedings until Barnhouse was in Montana—induced him to waive resisting extradition to Montana. The record does not even show that Barnhouse knew of the prosecutor's decision to defer extradition. Honoring the extradition request of another state will not later estop the rendering state from pursuing its own criminal prosecution on charges outstanding against the fugitive. *Application of Fedder*, 143 Cal. App.2d 103, 299 P.2d 881 (Cal.Dist.Ct.App. 1956). Under these circumstances we conclude that no pretrial action occurred which would require the district court to decline jurisdiction on due process grounds.

■ Criminal jurisdiction might also be contrary to a privilege created by federal or state statute. For example, with respect to extradition, I.C. § 19–4524 exempts a person brought into Idaho from service of civil process until conviction or, on acquittal, until ample opportunity to return to the asylum state has been provided. *Ex parte Dodd*, 72 Idaho 351, 241 P.2d 359 (1952). However, no similar immunity exists against prosecution on outstanding criminal charges. Once the fugitive is present as a result of interstate extradition, he may be tried for other crimes in the demanding state. *Lascelles v. Georgia*, 148 U.S. 537 (1893); *see also* I.C. § 19–4525. Further, the relevant federal and state extradition statutes are silent as to any privilege from criminal prosecution during transport between the asylum state and the demanding state.

Although the rule that parties, witnesses, and attorneys are privileged from arrest on civil process while in attendance at court and for a reasonable time in going to and from court appears to be well recognized, [footnote omitted] it seems that generally, at least in the absence of statute to the contrary, no similar privilege from arrest on a criminal charge exists.

Annot., 74 A.L.R.2d 592, 593 (1960).

■ Barnhouse declined to challenge Montana's extradition knowing full well that Idaho lay between the two states and that a warrant for his arrest was outstanding in Idaho. We do not believe the initial decision of the Clearwater prosecutor to defer extraditing Barnhouse until he arrived in Montana constituted a promise of free passage through Idaho or that it affected jurisdiction to arrest and prosecute Barnhouse once he was found within Idaho.

Although given uniformly available interstate extradition it might be wise for authorities to refrain from arresting fugitives while in transit, we do not decide whether a demanding state, such as Montana in this instance, could successfully assert its own prior claim to the fugitive. *See generally Mahon v. Justice*, 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283 (1888) (dissent distinguishes between state and individual as petitioners). In this case Montana authorities agreed to the delay.

We ascertain that no constitutional or statutory interest in orderly extradition has been violated in respect to Barnhouse. "The object of our extradition laws, as between states, is not to afford any refugee or fugitive any personal privilege or immunity whatever; ..." *Ex parte Henderson*, 27 N.D. 155, 145 N.W. 574, 576 (1914). In the absence of any obstruction to the dis-

trict court's jurisdiction, Barnhouse's conviction for grand theft is affirmed.

SWANSTROM, J., concurs.

BURNETT, Judge, dissenting.

This appeal illustrates a tension between result orientation and process orientation in the administration of criminal justice. The majority opinion achieves a desirable result by upholding the conviction of a person admittedly guilty of an Idaho offense. But the majority reaches this result by overriding fundamental concerns about due process and the proper functioning of our interstate extradition system. Because I believe these concerns are entitled to greater weight than the majority gives them, I respectfully dissent.

It is important to understand the unique circumstances presented here. This is not a case where a state has found a fugitive within its borders and has brought him to justice. This is a case where the state has seized a person already in custody while he was being transported to another jurisdiction. It will be recalled that Wesley Barnhouse was detained in Oregon after authorities there were notified of criminal charges pending against him in Idaho and Montana. Barnhouse insisted upon extradition by Idaho, but he waived extradition by Montana. The prosecutor in Idaho notified the Oregon authorities that Idaho would defer extradition proceedings and would allow Barnhouse to be transported to Montana. The transportation route from Oregon to Montana ran through Idaho. As Barn-

house, while still in custody, was passing through Idaho on his way to Montana, he was seized. Despite the prosecutor's prior assurance, Barnhouse was held to answer for the Idaho offense.[1]

The issue framed by these facts is simply stated. Did the seizure in Idaho circumvent, and therefore abridge, Barnhouse's right to due process in extradition? The majority opinion does not directly answer this question. Rather, the majority narrows the inquiry to one of district court jurisdiction. Then, relying upon the rule that jurisdiction is not defeated by the manner in which an accused person is brought before a court, the majority rejects Barnhouse's complaint that he has been unfairly treated.[2]

The majority's decision is consistent with *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), and *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). However, I think the time has come to break out of the rigid jurisdictional mold forged by *Ker* and *Frisbie*. It is time to recognize that due process rights of accused persons, and state interests in comity, are impaired when the orderly processes of interstate extradition are disrupted or evaded.

Forcing a person to appear in another state and to answer criminal charges there is a significant intrusion upon a liberty interest. For that reason the accused person is entitled to challenge extradition proceedings brought against him. In this case, if Idaho had demanded extradition

---

1. The majority obliquely challenges this summary of the facts by asserting that Barnhouse was not "'seized' while in the custody of either Oregon or Montana authorities." I find it clear beyond cavil that a seizure occurred. Barnhouse was arrested in Idaho, jailed and prevented from leaving the state. What the majority may be suggesting is that Idaho law enforcement officers, rather than officers from Oregon or Montana, had physical custody of Barnhouse at the time of the seizure. But if Idaho officers had such physical custody, they obtained it—as explained by the prosecutor—only because Idaho is a party to a mutual assistance agreement for transporting persons "from one state to another." Idaho's apparent deviation from that agreement in this case hardly strengthens the

majority's analysis. Rather, it underscores the concerns expressed in this dissenting opinion.

2. The majority also questions Barnhouse's standing to complain about mistreatment in Idaho when the State of Montana has acquiesced in Idaho's action. The majority seems to believe that proper extradition is solely a matter of state interest, not a matter of individual right. For reasons set forth *infra*, I think it is both. Moreover, analogous concerns about individual due process and comity among the states have long been recognized to overlap in civil cases where personal jurisdiction is at issue. *E.g., International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

from Oregon, Barnhouse could have challenged any procedural defect in the demand. Absent executive action upon a valid demand, Oregon authorities could not have delivered Barnhouse to Idaho. Because due process requires strict observance of proper demand requirements, the United States Supreme Court has held that habeas corpus is available to an accused person who challenges his custody pending extradition. *Roberts v. Reilly*, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885) (federal habeas corpus); *Illinois ex rel. McNichols v. Pease*, 207 U.S. 100, 28 S.Ct. 58, 52 L.Ed. 121 (1900) (state habeas corpus). *See generally* Note, *Extradition Habeas Corpus*, 74 YALE L.J. 78, 89 n. 46 (1964).

The state and federal statutes governing extradition similarly recognize an accused person's right to challenge an improper demand. Idaho Code § 19–4510 is typical:

No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he has been informed of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand legal counsel; and if the prisoner, his friends, or counsel shall state that he or they desire to test the legality of the arrest, the prisoner shall be taken forthwith before a judge of a court of record in this state, who shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. And when such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the public prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state.

The accused person may petition for habeas corpus on numerous grounds. He may allege that the extradition papers are not in order; that the charge is inadequate to support extradition, or is insubstantial; that he is not the person named in the extradition papers; or that he is not a fugitive because he was not present in the demanding state at the time of the alleged offense. *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978). The petitioner also may be entitled to a finding of probable cause for his arrest in the asylum state. *Id.* (Blackmun, J., concurring).[3]

Here, Barnhouse effectively was denied an opportunity to make any such challenge to improper extradition. The extradition process was entirely avoided. The State of Idaho simply took raw advantage of the fact that Barnhouse was physically present within its boundaries, albeit in custody and en route to Montana. We should not condone this deprivation of due process and circumvention of the interstate extradition system.[4]

I do not advocate wholly setting aside the general rule that a court has jurisdiction regardless of the means employed to secure the defendant's presence. However, I do suggest, as a corollary to the rule, that a court may decline to exercise its jurisdiction when the defendant's appearance has been produced by means inconsistent with fundamental fairness and comity in the extradition process. The district court should have declined to exercise jurisdiction in this case. Had it done so, Barnhouse would have been released for continued transit to Montana, and Idaho

---

3. At least one court has taken an additional step, holding that an accused person extradited from another state may challenge the validity of his arrest upon return to the demanding state. *State ex rel. Lutchin v. County Court*, 42 Wis.2d 78, 165 N.W.2d 593 (1969). Although that holding is not apposite here, it illustrates the growing importance of due process in extradition cases.

4. The taint of Barnhouse's improper seizure has not been removed by his subsequent plea of guilty. That plea was entered conditionally, preserving the issue now before us. Consequently, this case does not fall within a rule, announced by some courts, that trial and conviction in the demanding jurisdiction ordinarily cures any defects in an improper extradition. *E.g., Campbell v. Smith*, 308 F.Supp. 796 (S.D. Ga.1970).

later could have resecured his presence by proper extradition. The modest time and expense consumed by this procedure would have been a small price to pay for vindicating the integrity of our criminal justice system.

It is not too late to remedy the district court's error. The record indicates that Barnhouse now is in Montana, having been sent there after the Idaho court pronounced sentence. The Idaho judgment recites "that the defendant shall receive credit for the time served in the Clearwater County jail, and all time served in the State of Montana subsequent to the date of sentencing in this matter." If the Idaho judgment were set aside, Barnhouse could be extradited. If he were convicted again, he could receive similar credit in the sentence then imposed. However, by refusing to disturb the present judgment, the majority today places greater value upon perpetuating a result than upon preserving the fairness of the system. Its decision undermines due process and sends an unfortunate message to sister states who depend upon Idaho's cooperation for orderly extradition and interstate transportation of persons in custody.